# Supreme Court of Florida

——————

No. SC2024-0428

——————

**SCOTT ARON STEWART,**
Petitioner,

vs.

**MISHELLE ADDYS PERDOMO VINDEL,**
Respondent.

July 9, 2026

GROSSHANS, J.

Does a trial court have statutory authority to achieve an equitable division of marital property by awarding prejudgment interest?  In short, our answer is yes.  Such awards, though, are not a matter of entitlement.  Instead, the decision to grant prejudgment interest is a discretionary one, depending on the particular facts of a given case.  We approve the Third District Court of Appeal's decision to the extent it aligns with these conclusions and our analysis below.  *See Vindel v. Stewart*, 388 So. 3d 228 (Fla. 3d DCA 2024).  We disapprove the First District Court

of Appeal's contrary decision, which held that prejudgment interest is never permitted in the equitable-distribution context. *See Iarussi v. Iarussi*, 353 So. 3d 75, 79-81 (Fla. 1st DCA 2022).[1]

## I

This case stems from the 2018 petition filed by Scott Stewart (former husband), in which he asked the trial court to dissolve his marriage with Mishelle Perdomo (former wife). Nine months after the petition was filed, the court entered an uncontested judgment dissolving the marriage. The court, however, reserved ruling on several disputed issues—namely, matters of equitable distribution, alimony, and attorney's fees and costs.

The contested equitable-distribution issues were not fully resolved until 2022, when the trial court supplemented its earlier judgment. Notably, the court valued the marital property as of the date of the dissolution petition. Also in the updated judgment, the court considered the former wife's request for prejudgment interest. Specifically, she asked for interest on "her share of the assets" from the date the former husband filed the dissolution petition to when

---

1. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

the marital assets were eventually distributed.  Finding that "it would be inequitable to charge the [f]ormer [h]usband for delays largely occasioned by the pandemic," the court refused to award prejudgment interest.

The former wife appealed, asking the Third District to reverse for several reasons.  The district court found merit in three of her arguments.  It found that the trial court committed error in a key evidentiary ruling at trial and in denying (without supportive factual findings) the former wife's request for attorney's fees.  *Vindel*, 388 So. 3d at 233-35, 238-39.  And as relevant here, the district court held that the trial court's "stated basis" for denying prejudgment interest lacked evidentiary support and was inconsistent with the purpose underlying prejudgment-interest awards.  *Id.* at 236-38. The district court acknowledged tension with the *Iarussi* decision. *Id.* at 237-38, 238 n.5.

In *Iarussi*, the First District held that a trial court lacks the authority to award prejudgment interest as part of an equitable distribution.  353 So. 3d at 80.  As highlighted by the district court, the statute governing equitable distributions, section 61.075, Florida Statutes, does "not mention[]" prejudgment interest at all.

*Id.* at 79. The court further stressed a provision in that statute, which specifically authorizes interest on installment payments made after entry of the judgment distributing property, i.e., postjudgment interest. *Id.* at 80. That provision was significant in the court's view because the express authorization of interest in that "one circumstance" implies that the Legislature "intentionally did not provide for it in others." *Id.*

The First District also discussed one of our cases on prejudgment interest, which relied on the "loss theory." *Id.* (discussing *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985)). That theory, the district court reasoned, is incompatible with the purpose of equitable distribution and the nature of marital property. *Id.* Specifically, the court said as follows:

> The purpose of equitable distribution is to distribute marital assets equitably, and does not deal in prior loss, entitlement, or unjust enrichment. . . . The separation of married persons inevitably causes temporary distance between people and their property. But marital property, which is all that we deal with when discussing an equitable distribution, is owned by both parties. Because they both jointly owned all of the marital assets subject to distribution, it necessarily follows that neither could have suffered a deprivation of property warranting prejudgment interest prior to entry of final judgment. . . .

> . . . Dissolution of marriage cases, by their nature, have no winners or losers, no losses or gains, because the distribution of marital assets is simply the separation of existing interests.

*Id.* (citations omitted).

Relying on *Iarussi*'s competing understanding of prejudgment interest in the equitable-distribution context, the former husband asked us to review the Third District's decision. We granted that request.

## II

As he argued below, the former husband contends that trial courts lack statutory authority to award prejudgment interest in the equitable-distribution context. We disagree. Section 61.075 expressly authorizes those remedies "available to a court to do equity between the parties." This broad grant of authority encompasses the power to award prejudgment interest.

Our conclusion and the supporting analysis reflect our "paramount concern" for section 61.075's text. *Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 354 (Fla. 2023) (quoting *Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021)). Indeed, what the words of a statute "convey, in their context, is what the text means."

*Id.* (quoting *Levy*, 326 So. 3d at 681). And because context is critical in determining meaning, *see Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022), we do not look at any one provision in isolation but consider "the language and design of the statute as a whole," *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988)).

## A

It is well-settled that dissolution-of-marriage cases are equitable in nature. Almost two centuries ago, Florida's territorial council enacted a statute declaring that divorce proceedings are "in Chancery." An Act concerning Divorces and Alimony, § 2, Acts of the Legislative Council of the Territory of Florida, Seventh Session (1828). That same statute recognized a court's equitable authority in handling alimony and other forms of support. *Id.* § 7.

And as reflected by our precedent, equity has remained a key statutory consideration in divorce cases. *See Williamson v. Williamson*, 367 So. 2d 1016, 1018 (Fla. 1979); *Engebretsen v. Engebretsen*, 11 So. 2d 322, 329 (Fla. 1942). For example, in *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980), we said

that "trial judges are granted . . . discretionary power because it is impossible to establish strict rules of law for every conceivable situation which could arise in the course of a domestic relation proceeding."  Not surprisingly, current laws governing the marital-dissolution process routinely direct courts to consider what is necessary to achieve an equitable outcome between the parties.  *See* § 61.08, Fla. Stat. (alimony); § 61.077, Fla. Stat. (setoffs for sale of marital home); § 61.14, Fla. Stat. (enforcement of support orders).

The equitable-distribution statute is no exception.  At the very outset, the statute details its scope.  It applies to "a proceeding for dissolution of marriage," such as this case.  § 61.075(1).  Critically, the statute specifies that its substantive rules on distributing marital property are "in addition to all *other remedies* available to a court to do equity between the parties."  *Id.* (emphasis added).  Thus, the statute expressly sanctions a court's use of equitable remedies other than those listed in the text.  *Id.*

The statute then proceeds to outline various principles for distributing property.  It directs the trial court to begin with the premise that distributions of marital property should be equal,

"unless there is a justification for an unequal distribution based on all relevant factors." *Id.* It then provides a list of ten factors for the trial court's consideration. *Id.* At the conclusion of that list, there is a catchall provision that applies if the judge finds "[a]ny other fact[] necessary to do equity and justice between the parties." § 61.075(1)(j). Again, the plain language of the statute gives leeway to the trial court in reaching an equitable resolution.

A subsequent provision authorizes the court to order a cash payment in a lump sum or installments. § 61.075(10)(a); *see also* § 61.075(2). This determination is to be guided by the judge's objective "[t]o do equity between the parties." § 61.075(10). Moreover, recognizing that distribution at the end of the case may cause hardship to a party, or that the parties may not have equal access to marital funds, the statute also empowers the court to make an interim distribution in favor of the burdened party. § 61.075(5). That decision is also informed by the same factors discussed above, including the equity catchall. *Id.*

Additionally, the statute gives the judge flexibility in setting the valuation date of marital property. § 61.075(7). Equity plays into that determination as well: "The date for determining value of

assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances." *Id.* Assignment of a later date obviously allows the court to value property in a way that takes account of its subsequent appreciation or depreciation.

One other provision deserves mention. The statute provides that the intentional dissipation, waste, depletion, or destruction of marital assets may be considered in the final determination. § 61.075(1)(i). Notably, this provision gives trial courts authority to consider a spouse's *loss of access* to marital property as a factor relevant to whether it should order an unequal distribution. Though this provision does not expressly mention equity, it clearly serves equitable purposes. In a sense, it allows the court to hold one of the parties responsible for bad-faith conduct in dealing with marital property. *See Beers v. Beers*, 724 So. 2d 109, 115 (Fla. 5th DCA 1998) (discussing this provision).

Against this backdrop, we now make four observations about the statute that bear on our conclusion in this case.

First, equity is a central feature of section 61.075, as can be seen from the provisions discussed above. The statute directs the

judge to apply equitable considerations when making specific determinations, including whether to order an unequal distribution, whether to order an interim partial distribution, and what date should be used to value the marital property. § 61.075(1), (5), (7). What is more, the statute authorizes the judge to take account of situations where property is destroyed or rendered less valuable due to the conduct of one of the parties. § 61.075(1)(i).

Second, there is no specific statutory prohibition on prejudgment interest, as the First District itself noted. *Iarussi*, 353 So. 3d at 79.

Third, the statute unambiguously sanctions the trial court's use of additional, though unspecified, equitable remedies when warranted by the facts of a given case.

And fourth, prejudgment interest can be fairly described as an equitable remedy in this context. We have often stressed that prejudgment interest is designed to make an aggrieved individual "whole." *Argonaut Ins.*, 474 So. 2d at 215; *Westgate Mia. Beach, LTD. v. Newport Operating Corp.*, 55 So. 3d 567, 574 (Fla. 2010). Thus, in that sense, prejudgment interest is remedial. What is more, courts have recognized that prejudgment interest can have

equitable dimensions.  We, for instance, have noted that

prejudgment interest is informed by "equitable considerations."

*Broward Cnty. v. Finlayson*, 555 So. 2d 1211, 1213 (Fla. 1990);

*accord Sec. & Exch. Com'n v. Lipson*, 278 F.3d 656, 663 (7th Cir.

2002) (recognizing that prejudgment interest is an "equitable

remedy" when "the award to which it is attached is equitable" (citing

*Kerr v. Charles F. Vatterott & Co.,* 184 F.3d 938, 946 (8th Cir.

1999))).[2]

These observations, informed by our holistic assessment of the

statute, support the conclusion that prejudgment interest is one of

the "other remedies" available to the trial court as a means of

achieving an equitable outcome.

And though we do not belabor this point, we note that our

conclusion is consistent with the majority view of Florida's district

courts, which have allowed prejudgment interest in this context.

*E.g.*, *Catalfumo v. Catalfumo*, 704 So. 2d 1095, 1100 (Fla. 4th DCA

---

2.  We observe that the former husband does not claim that prejudgment interest fails to qualify as either remedial or equitable. Nor does he dispute that section 61.075 authorizes awards and distributions comparable to what could be achieved through prejudgment interest.  *See, e.g.*, § 61.075(1), (7).

1997); *Schuenzel v. Schuenzel*, 320 So. 3d 214, 216 (Fla. 3d DCA 2021); *Mobley v. Mobley*, 920 So. 2d 97, 103 (Fla. 5th DCA 2006). In fact, the First District is the only district court to hold otherwise.

B

We now address the reasons given by the First District in support of its holding that prejudgment interest is categorically prohibited in the equitable-distribution context. The court gave two grounds for its holding: the statute's text and our precedent on prejudgment interest. But in our view, neither rationale supports the First District's decision.

We begin with the First District's statutory justifications. Much of the court's analysis flowed from its observation that section 61.075 does not specifically mention prejudgment interest. That much is true. However, the court failed to consider whether prejudgment interest could qualify as one of the "other remedies" available under section 61.075(1). The court also did not fully account for the statute's many equity-based provisions which operate to afford trial courts broad discretion in ruling on various issues.

Additionally, as noted earlier, the First District relied on a

statutory provision expressly authorizing the court to award postjudgment interest, i.e., interest that accrues after the judgment is entered. That provision states, "If installment payments are ordered, the court may require security and a reasonable rate of *interest* or may otherwise recognize the *time value of the money* to be paid in the judgment or order." § 61.075(10)(b) (emphasis added). According to the First District, this reference to postjudgment interest—coupled with the statute's silence on prejudgment interest—gives rise to a negative implication that prejudgment interest is excluded from the statute's scope. The court put it this way: "[W]e can infer that because the [L]egislature provided for interest in one circumstance, it intentionally did not provide for it in others." *Iarussi*, 353 So. 3d at 80.

However, in our view, the First District's reliance on the negative-implication canon is misplaced. We have stressed that this canon "must be applied with great caution, since its application depends so much on context." *Alachua Cnty. v. Watson*, 333 So. 3d 162, 172 (Fla. 2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012)). It only applies if "the thing specified[] can reasonably be thought to be an

- 13 -

expression of *all* that shares in the grant or prohibition involved."
*S. Marion Real Est. Holdings, LLC v. Fla. Gaming Control Comm'n*,
387 So. 3d 1246, 1251 (Fla. 5th DCA 2024) (alteration in original)
(quoting Scalia & Garner, *supra*, at 107).

Here, the provision on postjudgment interest is specifically tied
to installment payments made after the court distributes the
parties' marital property. Thus, it addresses a discrete issue: the
authority of the trial court to award continuing interest once
judicial labor ends. We would not expect this provision—with its
narrow function—to be a complete statement of all things interest-
related in the statute. This being so, we conclude that the
postjudgment-interest provision does not offer a comprehensive
treatment of interest necessary to justify an inference about the
absence of prejudgment interest from its text. *See Watson*, 333 So.
3d at 172 (finding negative-implication canon inapplicable where
lame-duck provision was not exhaustive of sheriff's or county's
authority).

Turning to its second rationale, the First District concluded
that awards of prejudgment interest as part of equitable
distribution would be inconsistent with this Court's approach to

- 14 -

prejudgment interest in other contexts. It discussed our decision in *Argonaut Insurance*, indicating that we applied the loss theory of prejudgment interest in "tort cases." *Iarussi*, 353 So. 3d at 80. "[L]oss," in the First District's view, meant a defendant's "wrongful deprivation" of a plaintiff's property. *Id.* (quoting *Argonaut Ins.*, 474 So. 2d at 215). From those observations, the court stressed what it deemed to be the critical difference between tort and dissolution-of-marriage cases: "Because [the spouses] both jointly owned all of the marital assets subject to distribution, it necessarily follows that neither could have suffered a deprivation of property warranting prejudgment interest prior to entry of final judgment." *Id.*

Though the First District accurately reproduced certain principles from *Argonaut Insurance*, we cannot agree with its conclusion that the "loss theory" renders prejudgment interest inapplicable in equitable-distribution proceedings. In *Argonaut Insurance*, we resolved a district conflict over the doctrinal basis for prejudgment interest. 474 So. 2d at 215. We clarified that "neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest." *Id.* Instead, "the *loss itself* is a wrongful deprivation by the defendant of the plaintiff's

- 15 -

property.  Plaintiff is to be made whole from the date of the loss

once a finder of fact has determined the amount of damages and

defendant's liability therefor."  *Id.* (emphasis added); *accord Bosem*

*v. Musa Holdings, Inc.*, 46 So. 3d 42, 45 (Fla. 2010) (confirming that

the "loss theory" differs conceptually from a penalty-based

rationale).[3]

    We have not previously addressed the availability of

prejudgment interest in the dissolution-of-marriage context.  But,

consistent with our analysis above, the "loss theory" of prejudgment

interest is not incompatible with the equitable concept of property

division in dissolution-of-marriage cases.  Under this theory, the

plaintiff is awarded prejudgment interest to be "made whole."

*Argonaut Ins.*, 474 So. 2d at 215.  This objective fully aligns with

the concepts of equity and justice, *see Finlayson*, 555 So. 2d at

1213 (noting that the award of prejudgment interest "may depend

---

3. We have applied a different rule for personal-injury cases. In such cases, we have held that a plaintiff's damages are simply too speculative to support an award of prejudgment interest. *Lumbermens Mut. Cas. Co. v. Percefull*, 653 So. 2d 389, 390 (Fla. 1995); *Amerace Corp. v. Stallings*, 823 So. 2d 110, 113 (Fla. 2002). We express no view on the correctness of those decisions.  We need only observe that there is a significant difference between personal-injury cases and equitable-distribution proceedings.

on equitable considerations"), which are central to section 61.075 and proceedings thereunder. As such, we find that the First District took an overly narrow view of our precedent on prejudgment interest.

We also believe that the court misconstrued the function of equitable distribution in one significant respect. It asserted that equitable distribution "does not deal in prior loss, entitlement, or unjust enrichment." *Iarussi*, 353 So. 3d at 80. This statement is in conflict with the statute. The provisions discussed earlier show that a trial court should take into account the very things the First District found inapplicable.

Section 61.075(1)(i), for instance, allows the court to consider a party's depletion of marital assets in determining their appropriate division. We also note that other provisions of the statute direct the court to broadly consider the parties' contributions to the marriage. § 61.075(1)(a), (g). And to the extent any of the three items identified by the First District are not covered by discrete provisions, they are encompassed by the equity catchall provision. *See Beers*, 724 So. 2d at 115.

Finally, the First District's view disregards practical

considerations. To this point, the Third District accurately observed that the *Iarussi* court

> overlook[ed] the fact that, even if jointly owned, it may well be that one spouse had taken steps to secure sole access to and use of those marital assets, to the exclusion of the other spouse. The fact that the asset may be jointly owned does not mean there could not be— as a practical matter—a deprivation of access to and use of a marital asset, thus warranting consideration of an award of prejudgment interest.

*Vindel*, 388 So. 3d at 238 n.5.

Consequently, we cannot endorse the First District's reasoning.

### III

We offer a few concluding thoughts about the scope of this opinion and the remand in this case. Consistent with our analysis above, we stress that prejudgment interest is simply one of the remedies available to the trial court to achieve equity in the distribution of marital property. Accordingly, a party in such proceedings is not automatically entitled to prejudgment interest. Rather, there must be some facts or circumstances to justify the award. For example, prejudgment interest could be appropriate where a spouse is deprived of significant marital property during

- 18 -

the pendency of a dissolution proceeding. *E.g.*, *Catalfumo*, 704 So. 2d at 1100. But even where a sufficient basis exists, the trial court retains discretion in determining whether this particular remedy would be a fitting tool "to do equity between the parties." § 61.075(1).

In this case, the trial court denied prejudgment interest, reasoning only that it would be unfair to require the former husband to pay such interest based on circumstances the court deemed to be beyond the former husband's control. The Third District rejected that factual finding. On remand, the trial court should reconsider whether the facts in this case support an award of prejudgment interest as directed by the Third District. If such facts are present, the court should then consider, in its discretion, whether an award of prejudgment interest would be an appropriate way of achieving equity between the former husband and former wife.

IV

For the reasons given above, we hold that a trial court has discretionary authority to award prejudgment interest in order to achieve equity in distributing marital property under section

61.075. Accordingly, we approve the decision below and remand for proceedings consistent with this opinion. We disapprove *Iarussi* to the extent that it is inconsistent with our opinion.

It is so ordered.

COURIEL, C.J., and MUÑIZ, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., dissents with an opinion.
TANENBAUM, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

"The courts cannot and should not undertake to supply words purposely omitted. *When there is doubt as to the legislative intent or where speculation is necessary*, then the *doubts should be resolved against the power of the courts* to supply missing words." *Armstrong v. City of Edgewater*, 157 So. 2d 422, 425 (Fla. 1963) (emphasis added).

In section 61.075, Florida Statutes, the Legislature establishes the remedies available to the trial court to do equity in an equitable distribution of marital assets and liabilities. Among the available remedies "[t]o do equity between the parties" is subsection (10)(a), which provides that a trial court may "order a monetary payment in

- 20 -

a lump sum or in installments paid over a fixed period of time."
§ 61.075(10)(a), Fla. Stat.

When the court orders installment payments of an equitable distribution award, the Legislature permits an award of what is referred to as postjudgment interest. Subsection (10)(b) provides that the trial court "may require security and a reasonable rate of interest or may otherwise recognize the time value of the money to be paid in the judgment or order." Subsections (10)(a) and (10)(b), read together, expressly authorize the trial court to factor into an equitable distribution the time value of an award that is to be paid over a fixed period of time following the issuance of the final judgment of dissolution.

While subsection (10) clearly permits an award of postjudgment interest in an equitable distribution, today, the majority opens the door to a remedy the Legislature did not include in section 61.075: prejudgment interest. Because we cannot add meaning to a statute "to supply relief in instances where the [L]egislature has not provided such relief," I dissent. *Dade County v. Nat'l Bulk Carriers, Inc.*, 450 So. 2d 213, 216 (Fla. 1984).

In my view, because subsection (10) provides for postjudgment interest, the Legislature intended not to—and did not—provide for awards of prejudgment interest. Indeed, no statutory text expressly speaks to an order of interest to account for the time value of the equitable distribution award from the date of the petition for dissolution of marriage to the date of final judgment. I agree with the First District's "infer[ence] that because the [L]egislature provided for interest in one circumstance, it intentionally did not provide for it in others." *Iarussi v. Iarussi*, 353 So. 3d 75, 80 (Fla. 1st DCA 2022). If the Legislature intended to give trial courts the discretion to award prejudgment interest, it could have done so.

While the majority notes—and I agree—that the trial court has broad authority to effect an equitable distribution, I nonetheless conclude it determinative that the Legislature expressly provided for postjudgment interest and did not do so for prejudgment interest. Thus, I disagree with the majority's rationale that "the postjudgment-interest provision does not offer a comprehensive treatment of interest necessary to justify an inference about the absence of prejudgment interest from its text." Majority op. at 14.

Because I would quash the Third District's decision permitting the award of prejudgment interest, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal Direct Conflict of Decisions

Third District - Case No. 3D2022-0757

(Miami-Dade County)

Sandy T. Fox and Sara E. Ross of Sandy T. Fox, P.A., Miami, Florida,

for Petitioner

Lisa A. Baird of Lisa A. Baird, P.A., Miami, Florida,

for Respondent